Mr. Sutton, thank you for taking the case under the Criminal Justice Act. May I please? Yes. May it please the Court, fellow Consul. This case is disturbing to me, I think, based on the totality of the circumstances, even though the appealability of one issue is before you. The issue, and I think it's over and over described in Strickland, and it talks about Frye, but my belief is that the Sixth Amendment protection, that is to have competent Consul, attaches immediately when you sign on with that client. That at that point, any dealings with that client's case that comes to your knowledge is your obligation then to say to that client, here is what I know, here is the decision that has to be made. And then you have to come to some decision between yourself and your client. In that discussion, you explain to your client, here are the positives, here are the negatives, here is where we can reach. And in this particular case, the attorney not only didn't have that discussion, he didn't do anything to convey it, he simply ignored it and let his client go forward. The problem with that is that with the background and experience in criminal law, that you have to look at this client having this criminal charges that appear to have been very tight. In other words, they seem to be very clear that a result of guilt would be incurred. And if you look at that result based on what happened, then what your next option as an attorney, or at least one you should explore, is what can I do to mitigate this sentence? Does the record show that the government ever offered any kind of an arrangement for the defendant? Judge, what I have in front of me is the letter from Nicole Prosh, and in that, she says, we would be willing to take a proffer. I think that's memorialized, and she provided a form for . . . What does that mean? A proffer means that you go in and, yes, you're taking a chance because what you do is disclose all of your criminal activity. And once you've disclosed that, then to the extent that information comes from that proffer that can be used, the government can then decide whether or not they will give you some departure. But it also indicates cooperation and how many points you'll get for that, so it can affect your sentence likewise. So it kind of opens the door to the potential for a . . . For the departure, yes. And that is what's so bothersome about this case is that's a lost opportunity that you can't correct in this particular case. And in this particular case, we have a defendant who is understandably, I think, hampered by his lack of English, speaking English, by using an interpreter. Has Mr. Ramirez communicated to counsel any willingness on his part to cooperate or to . . . Excuse me, Your Honor. He did file an affidavit, and again, that's part of the appendix, where he said, had I known anything about this, I would have cooperated. And because he was on the low end of this conspiracy as far as primary, he had every reason to do that, to cut his sentence, because he winds up getting 240 months. And that, you know, they talk about strategy in Strickland, and one of the things that again bothers me, there's no strategy to nondisclosure. It's simply . . . well, I think it's strict negligence, but I think that it's not conceivable that an attorney wouldn't discuss this. And also, when you do a proper judge, it's oftentimes that you go in and you'll sit down with the county attorney and say, now, here's what this proffer's about, and here's what I think will be revealed. Will you give me some inclination? It's not a commitment, I understand that, but some inclination toward this kind of information coming to you, and if it leads to other convictions. And usually, the response is, yes, I will. I'll tell you, if it's adequate and it's sufficient and it's good, it will lead to some benefit to your client. But again, if you don't know what that is, it's never been submitted to you, you're at a distinct disadvantage as a client. And it just struck me that that is one of the main lines of defense when there's overwhelming evidence against your client. And you've got to know, I mean, because you're allowed as a defense counsel to read all of the information. You have a very good feeling about where you're going. Does a statement by the prosecution that it's willing to consider a proffer constitute a formal kind of offer that normally accompanies a plea agreement? Judge, to me, if you write me that letter, you send me the proposal, I consider that if I accept it, we have a formal agreement. Because you will abide by it if you're the government, and you'll abide by it if you're the defendant, because you've signed it. So I think it's a contract. And I don't think that you have to get to the formality of a commitment for departure, because I've never seen that actually in writing. Usually, that's conveyed to me, and we then discuss it further. Are you able to meet the Missouri v. Fry test for prejudice? I think that the prejudice comes from the lost opportunity on an agreement. And I think the prejudice is that when you have an attorney who will not talk openly with you and tell you what needs to go on, that's where I come into the prejudice. So he's prejudiced not because we know what will happen, because he never had the opportunity to have that event occur. And I think that's what Fry says, Your Honor. I think that Fry talks about the specter of representation, and I think when they talk about that, they're talking about all phases of that representation. I think that to call that a tactic or tactical decision by an attorney is ridiculous. You can't make a tactical decision unless you've informed your client. He's prejudiced by just that very nature of that. I'm going to reserve my argument, if I could, Your Honor. And it looks like you're back again. Yes. Good morning again. I'd like to distinguish this situation from the Fry case, because in Fry, they were dealing with a formal plea offer that the government had issued to the defense counsel, and defense counsel never told his client about it. In this case, we don't have a formal plea offer. And when you read through Fry, they're very careful to emphasize that they're talking about formal plea offers in that case. They're not talking about agreements to discuss. How would a formal plea offer differ in form and substance from what was communicated to Mr. Ramirez's counsel? A formal plea offer, at least in our district, would have the actual plea agreement itself stating he agrees to plead to. And then it would have all of the rights that he is giving up by pleading guilty in it. It would also have any sentencing concessions that had been agreed to between the government and counsel. And it would also have a statement by Mr. Ramirez that he had discussed the plea with his client or his attorney and that he fully understood it. And that's what a formal plea offer is. And I don't think that this we're open to having hearing a proffer from your client is not the kind of formal plea offer that the Supreme Court was talking about in Fry. Because they specifically state in Fry that we are not defining the bounds of appropriate bargaining. Because there is such a wealth of different ways that attorneys bargain that we're not going to define the limits of effective assistance in the bargaining process. So that's why I don't believe that the Fry case applies. I think the biggest hurdle that Mr. Ramirez has here is the prejudice prong of Strickland. The district court found that Mr. Ramirez never expressed a willingness to cooperate, never indicated he possessed information that would be helpful to the government. Now he does have his affidavit apparently that was attached to his 2255. And he says he would have cooperated, but he doesn't provide any specifics. His claim that he would have received a lower sentence is speculative. And it's speculative because there are many instances in which people go ahead and sign a proffer agreement. They go in, they give their information, and for whatever reason the government decides not to use it. Or the government believes that they aren't being entirely truthful. Which then causes problems in being able to use that person's testimony because then their credibility can be challenged. And here, Mr. Ramirez asked his attorney to withdraw his plea before sentencing. His own actions belie his claim now that he would have cooperated. I don't think he can argue, well, I was totally willing to cooperate when he's asking his attorney to withdraw his plea. And if the court were to get into those things and the equitable argument that was made in the brief. Again, I would argue as I did in the last case that the certificate of appealability was limited to the issue of disclosure of the proffer letter, not the other three issues that are listed and discussed in the brief. And in looking at the recent case of Dwight Thomas versus United States, that's number 12-1853 decided December 16th, 2013. There is a footnote that talks about the expanding the certificate. And in that case, in the Thomas case, the court noted that the individual defendant had filed his certificate of appealability or his request pro se. And that therefore they felt, well, we'll go ahead and expand the record in this case because the issues weren't as clearly defined as they might have been. In this case, it was the district court that issued the certificate of appealability. And so for those reasons, I would ask that the court not expand the certificate of appealability in this case as it did in Thomas. That constitutes the total of my remarks and I would cede the rest of my time unless the court has any questions. Thank you, Your Honor. One moment. Okay. Mr. Sutton. Thank you, Your Honor. I listened to what is said, but I keep going back to a proffer was an offer. It had an agreement attached to it to accept. My client never had the opportunity to accept it. So then it is a formal plea offer. It's just the beginning phases. It's a part of it. But then when the Supreme Court says we're not defining the bargaining process, I think in closer inspection of Frye, you'll find that they look at the totality of the circumstances. And in this case, when you talk about prejudice, lost opportunity is the prejudice. I mean, you are not able as a defendant to take advantage of proffer, of dealing for a bargained sentence, and protecting yourself down the road. All of those things are available. I don't think they're guaranteed because you can get down to the end and even a judge would not necessarily have to follow that. What do you say to your opponent's comment that it's only speculation what . . . I don't think . . . I think that it is part of the right as a defendant to have everything disclosed to him and have the opportunity because I really think this is about opportunity. I think when you simply say that he didn't do it, Ramirez isn't the lawyer. Ramirez wasn't the one who is charged with the responsibility and knowledge. Yet he had taken away from him. Is there any inference that can be drawn from his withdrawing his guilty plea? I do not think so. I think that when he wanted to withdraw his guilty plea, the record is clear as to why he did that, but he still at that point is ignorant of the fact that he had a right to even proffer. At that point, he was becoming at odds with his attorney. I think that's probably what prompted that letter because he didn't know what was going on and he didn't know what he was facing. He didn't know how to deal with it. He, Ramirez. And I think that that's what happened. But I think that this totality of the circumstances, it just goes back and it goes to lost opportunity and what could be more prejudicial to me if I have three options and you tell me two and I don't get to consider the third. And in this case, he doesn't tell him any opportunity. He doesn't explain it to him. He doesn't prepare him. And I think that that's the inherent prejudice of having counsel who doesn't deal with you on a fair, unbiased basis where he explains it to you because it's not strategy. And that's one of the big things we keep talking about in the other two cases, Strickland and in Frye. And I'm hoping that based on this, you'll see that it is a prejudicial result and that you will enter an order accordingly. Thank you. Thank you, counsel. We have a lot to think about on all these cases this morning and we'll issue decisions in due time. Hopefully very prudent ones. Thank you. So, yes. Adjourned until further notice.